No. 03-054

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 105

KAREN GRAF,

Plaintiff and Appellant,

v.

CONTINENTAL WESTERN INSURANCE COMPANY
and MONTANA CLAIMS SERVICES, INC.,

Defendants and Respondents.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDV-99-949(B),
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Dennis Conner (argued) and Daniel Shannon, Conner & Shannon, PLLP,
Great Falls, Montana

For Respondents:

Robert F. James and Cathy J. Lewis (argued), Ugrin, Alexander,
Zadick & Higgins, P.C., Great Falls, Montana (Continental)

William J. Gregoire, Smith, Walsh, Clarke & Gregoire, Great
Falls, Montana (MCS)

For Amici Curiae:

L. Randall Bishop (argued), Jarussi & Bishop, and Roberta
Anner-Hughes, Edwards Law Firm, Billings, Montana (MTLA)

Bradley J. Luck and Kevin A. Twidwell, Garlington, Lohn
& Robinson, PLLP, Missoula, Montana (NAII)

Heard and Submitted:  October 21, 2003
Decided:   April 20, 2004

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court

¶1 Karen Graf (Graf) appeals from a summary judgment entered by the District Court, Eighth Judicial District, in which the District Court concluded that, as a matter of law, a defense verdict in the underlying negligence action provided Continental Western Insurance Company (Continental) and Montana Claims Services, Inc. (MCS), with a reasonable basis defense to Graf's subsequent § 33-18-201 et seq., MCA, Unfair Trade Practices Act (UTPA) claim. Graf's motions to reconsider, alter or amend the judgment were denied. We reverse.

## Issues on Appeal

¶2 1. Does the jury verdict in favor of the insureds in the underlying case, appealed and later released as part of a settlement reserving bad faith claims, provide Continental and MCS with a "reasonable basis" defense to Karen Graf's subsequent UTPA claim as a matter of law?

¶3 2. Does the jury verdict in favor of the insureds in the underlying case provide Continental and MCS with a "collateral estoppel" defense to Karen Graf's subsequent UTPA claim?

¶4 3. Did the District Court err in determining that all facts raised in Karen Graf's bad faith case were known to her before she settled her underlying claim; and that since she could have brought her allegations of misconduct to the attention of the District Court by way of a Rule 60(b) motion, she is foreclosed from proceeding with at UTPA claim?

¶5 4. Did the District Court err in finding, as a material undisputed fact, that "Continental concluded that the liability of its insureds was not reasonably clear in part based upon the opinions of its trucking expert, Gene Breeden?"

## Factual and Procedural Background

¶6    The District Court found the undisputed material facts to be as follows:

1.  On October 14, 1994, at approximately 3:00 o'clock, p.m., Plaintiff Karen Graf drove her car southbound on 15th Street and was stopped for a red light at the intersection of 15th Street and River Drive in Great Falls, Montana.

2.  On the same date and time, Daniel Armstrong, an employee of the Goosebill Ranch, was driving a semi-truck with two trailers attached and was traveling southbound on 15th Street towards River Drive.

3.  While coming down the 15th Street hill, Armstrong was unable to stop and his truck ran through two red lights and rear-ended the vehicle being driven by Mr. Steven Cloutier that was stopped at the second red light.

4.  After striking the Cloutier vehicle, Armstrong's truck struck the rear of Graf's vehicle.  Her vehicle was pushed across the intersection of River Drive, where it collided with a semi-tractor/trailer that was proceeding through the intersection.

5.  Continental insured the Goosebill Ranch and therefore Daniel Armstrong. Continental retained independent adjusters MCS to assist in adjusting portions of the claim.

6.  Because the parties were unable to settle their dispute, Graf filed a lawsuit against Daniel Armstrong, Raymond Romaine, the designated agent of Goosebill Ranch, and the Goosebill Ranch ("Goosebill Defendants"), Cause No. BDV-95-1050.

7.  Graf contended that the Goosebill Defendants negligently caused the accident and her injuries.  The Defendants denied the allegations of negligence.  Graf was represented by Great Falls attorney John Iwen, now deceased.

8.  Continental concluded that the liability of its insureds was not reasonably clear, in part based upon the opinions of its trucking expert, Gene Breeden.

9.  Graf's case was tried before a jury, the Honorable Kenneth Neill presiding, beginning on May 27, 1997.  During at least some of the trial, attorney Channing Hartelius assisted attorney Iwen.

10. At trial, Graf moved for a directed verdict at the close of all evidence. Judge Neill denied that motion. Prior to trial, she had moved for summary judgment that was also denied.

11. The jury entered a defense verdict on May 30, 1997.

12. Graf then moved for judgment notwithstanding the verdict and for a new trial. Judge Neill denied both motions on August 18, 1997.

13. Graf timely filed a Notice of Appeal on September 12, 1997.

14. Beginning on January 5, 1998, Steven and Sonja Cloutier, who also sued the Goosebill Defendants in a separate action, Cause No. ADV-96-1274, tried their case to a jury, the Honorable Thomas McKittrick presiding. The Cloutiers were represented by Great Falls attorneys Dennis Conner and Channing Hartelius.

15. In the Cloutier case, after the close of all evidence, Judge McKittrick ruled that the Goosebill Defendants were negligent as a matter of law. He entered a directed verdict against the Defendants on the issue of negligence.

16. The jury then awarded the Cloutiers damages on January 15, 1998.

17. Continental paid the amount of the Cloutiers' jury verdict, and the Cloutiers gave the Goosebill Defendants a Satisfaction of Judgment which was filed on June 19, 1998.

18. On September 21, 1998, Graf settled her case while it was still on appeal, prior to the time her reply brief would have been due at the Montana Supreme Court.

19. Graf's settlement provided that Graf could reserve an action for "bad faith" against Continental. The Judgment against Graf was released as part of the settlement.

20. On August 23, 1999, attorney John Iwen, who represented Graf in her trial and her appeal, filed this lawsuit, claiming Continental violated § 33-18-242, Mont. Code Ann. and also alleging claims for outrage or intentional infliction of severe emotional distress.

4

21. After the death of John Iwen, attorney Dennis Conner took over Graf's representation in this lawsuit. Conner's substitution was filed on October 19, 2000.

## Discussion

¶7    1. Does the jury verdict in favor of the insureds in the underlying case, appealed and later released as part of settlement reserving bad faith claims, provide Continental with a "reasonable basis" defense to Karen Graf's subsequent UTPA claim as a matter of law?

¶8    In granting summary judgment to Continental and MCS, the District Court reasoned as follows:

> This Court finds that the significance of the jury verdict for the Goosebill Defendants, and the special place of the jury as the final arbiter of fact in our constitutional system, provides Continental and MCS with a reasonable basis defense, as a matter of law. Further, no UTPA claim will lie under the material undisputed facts here. In short, Graf cannot now bring a statutory bad faith lawsuit claiming liability was reasonably clear when a jury has decided just the opposite.
>
> In our justice system, the jury serves as the final arbiter of the facts, "charged with weighing the evidence, judging the credibility of the witnesses, and reaching a verdict" in each case. *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 625 (1991). Montana's Constitution reflects the important role of the jury in this state's judicial system. *See* Art. II § 26, 1972 Montana Constitution. This Court will not second-guess the jury's verdict in Graf's underlying case.

¶9    Graf contends that the District Court's requirement that a plaintiff establish liability as a prerequisite to asserting a bad faith claim is contrary to § 33-18-242(6)(b), MCA, which only requires settlement as a condition precedent to bad faith litigation.

¶10    Continental and MCS contend that "the law provides for factual disputes to be decided by a jury, and that was done in this case;" "that the jury, entrusted with deciding the

5

facts, the credibility of the witnesses, and liability–ultimately confirmed the insurer's conclusion;" and that to allow a UTPA claim to proceed in the face of the jury's verdict would "eviscerate the jury's role in our system of justice."

¶11 We agree with Graf.

¶12 The District Court's ruling is based on an assumption that a bad faith or UTPA claimant seeks to *relitigate* the underlying claim; that the issues in the underlying negligence claim and the issues in the UTPA claim are the same and, thus, if a jury has rendered a verdict adverse to the claimant in the underlying suit, those issues have been necessarily and conclusively resolved. This assumption is incorrect. The issues in a UTPA claim are separate from the issues in the underlying claim. In *Klaudt v. Flink* (1983), 202 Mont. 247, 252-53, 658 P.2d 1065, 1067-68, we held:

> The obligation to negotiate in good faith and to promptly settle claims does not mean that liability has been determined. Section 33-18-203(6) states that the insurer's obligation arises when liability has become "reasonably clear." In evaluating the insurance case, the jury must determine whether the insurer negotiated in good faith given the facts it then had. *This consideration is separate and apart from the jury's ultimate consideration of the merits of any given action.* [Emphasis added.]

¶13 The District Court erred in reasoning that a UTPA claimant must first establish liability on the underlying claim and that an adverse jury verdict necessarily defeats such a claim. This reasoning flies in the face of the UTPA which provides, "[a] third-party claimant may not file an action under this section until after the underlying claim has been settled or a judgment entered in favor of the claimant on the underlying claim." Section 33-18-

6

242(6)(b), MCA. As we held in *Safeco Ins. Co. v. MT Eighth Jud. Dist.,* 2000 MT 153, ¶ 28, 300 Mont. 123, ¶ 28, 2 P.3d 834, ¶ 28:

> Section 33-18-242(1), MCA, expressly provides that an UTPA claim against an insurer is an independent cause of action. See *Fisher*, 1999 MT 308, ¶ 16, 297 Mont. 201, ¶ 16, 991 P.2d 452, ¶ 16. We agree with Safeco that a third-party claimant who wishes to bring such an independent action under UTPA is required, by statute, to wait until "after the underlying claim has been settled or a judgment [is] entered in favor of the claimant on the underlying claim." *See generally Peris v. Safeco Ins. Co.* (1996), 276 Mont. 486, 491-92, 916 P.2d 780, 784 (discussing legislative intent of subsection (6)(b)). The language of the statute itself provides the underlying reasoning. Only those third-party claimants who are able to achieve a settlement or prevail at trial may, in turn, bring an UTPA action–meaning meritless UTPA claims are theoretically extinguished before a claim is ever filed. The provision serves to both protect insurers from frivolous claims and facilitate judicial economy.

¶14 Similarly, in *Lough v. Insurance Co. of North America* (1990), 242 Mont. 171, 789 P.2d 576, the district court granted summary judgment in a UTPA suit in favor of the defendant Liberty Mutual. The dispositive issue presented on appeal was whether a third-party claimant may maintain a bad faith action against an insurer after settling with the insured when liability was not established in the underlying case. In reversing the summary judgment we held:

> Section 33-18-242(6)(b), MCA, requires settlement or entry of judgment on the underlying claim prior to instigation of the bad faith claim. That section does not require that liability of the insured be established as a condition precedent to the bad faith litigation.
>
> Appellant in this case alleges violations of subsection 4, which requires no showing of reasonably clear liability, and subsection 6, which does. The District Court erred in granting respondent's motion for summary judgment on the basis that appellant failed to establish reasonably clear liability prior to suit. We reverse and remand for further proceedings consistent with this opinion.

*Lough,* 242 Mont. at 174-75, 789 P.2d at 578.

¶15    In conclusion, the issues in a UTPA claim are separate and distinct from the issues in the underlying suit. In the underlying negligence suit, the issue was whether the defendant Armstrong negligently caused the accident resulting in injury to Karen Graf. In the UTPA claim, the issue is whether the insurance carrier conducted a reasonable investigation and attempted in good faith to effectuate settlement of the claim when liability had become reasonably clear. Under the UTPA, a claimant does not have to establish liability in the underlying suit; a settlement of that claim is sufficient. A defense verdict in the negligence suit is not tantamount to a jury finding that the insurer did not violate the UTPA. Accordingly, a jury verdict for the defense in the underlying suit does not, as a matter of law, establish a "reasonable basis" defense under § 33-18-242(5), MCA.

¶16    Graf argues that a ruling that a defense verdict, as a matter of law, provides a reasonable basis defense to a subsequent UTPA claim, promotes the claim settlement abuses the UTPA was designed to deter. We agree.

¶17    The District Court's rationale assumes that a defense verdict will always be the result of complete disclosure of all facts relevant to a UTPA claim and was not procured through obfuscation or half-truths. The UTPA standards focus on what the insurer knows at a particular point in time–before trial, during the investigative settlement stage. As we noted in *Klaudt*, "[i]n evaluating the insurance case, the jury must determine whether the insurer negotiated in good faith *given the facts it then had.* This consideration is separate and apart from the jury's ultimate consideration of the merits of any given action." *Klaudt*, 202 Mont.

8

at 253, 658 P.2d at 1067-68. Unless one assumes that the jury in the negligence suit was aware of everything in the claims file during the investigative and settlement negotiation stages, there is no basis for concluding (as the District Court did) that the jury's verdict necessarily resolves all fact issues under the UTPA. Such an assumption is entirely unwarranted. Juries in negligence suits are not privy to all the investigative reports, evaluations and correspondence that find their way into claims files.

¶18 The UTPA is designed to address these very inquiries; that is, was there a reasonable investigation and did the insurer make a good faith attempt to effectuate a prompt and fair settlement of a claim in which liability had become reasonably clear? Section 33-18-201(6), MCA. The District Court's holding puts an insurer in the self-serving position of violating these prohibitions, thereby obtaining a defense verdict on the underlying claim and using that defense verdict as a basis to seek dismissal of a subsequent UTPA claim. If, as a matter of law, a defense verdict constitutes a defense to a UTPA claim, insurers are encouraged to obtain defense verdicts at any cost knowing that, in doing so, they will have shielded themselves from UTPA scrutiny. Such a precedent would defeat the public policy embodied in the UTPA–that is, insurer conduct is to be retrospectively measured against the standards adopted by the Legislature in enacting the UTPA. We reverse the District Court's conclusion that a defense verdict in Graf's underlying negligence claim establishes, as a matter of law, that Continental and MCS had a "reasonable basis" defense under § 33-18-242(5), MCA.

¶19 2. Does the jury verdict in favor of the insureds in the underlying case provide Continental and MCS with a "collateral estoppel" defense to Graf's UTPA claim?

9

¶20 The District Court held that when, during the pendency of her appeal, Graf chose to settle her claim and dismiss her appeal to this Court, the judgment became final and she was collaterally estopped from "relitigating Armstrong's liability" through a UTPA claim.

¶21 The District Court reasoned that since there was a final judgment on the merits in the underlying case and since the defendants in that case and in the UTPA suit are in privity, "all the elements of collateral estoppel" are clearly met. We have, however, applied a *three-part test* to determine if collateral estoppel works as a bar to subsequent litigation: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? *Rausch v. Hogan*, 2001 MT 123, ¶ 16, 305 Mont. 382, ¶ 16, 28 P.3d 460, ¶ 16. The District Court failed to recognize that the first criterion (identity of issue) is missing. The two suits present separate and distinct issues. The question in the underlying suit was whether Armstrong and/or Goosebill were negligent and whether that negligence caused damage to Graf. The question in the UTPA suit is whether the insurer's conduct ran afoul of the unfair claim settlement practices enumerated in § 33-18-201, MCA, specifically subsections (4), (6) and (13). The fallacy of the District Court's conclusion that Graf is collaterally estopped from "re-litigating Armstrong's liability" is most apparent from the text of subsection (4) which provides that it is an unfair claims settlement practice to "refuse to pay claims without conducting a reasonable investigation based upon all available information." Unlike subsections (6) and (13), subsection (4) is not linked to a showing of "reasonably clear liability" in the

10

underlying suit. Since liability (whether reasonably clear or not) is not a factor in subsection (4), one does not have to "re-litigate" the question of liability in pursuing the UTPA claim.

¶22 Continental and MCS argue that, although Graf did not litigate the issue of bad faith in the negligence suit, it "could have been raised" and thus the identity of issue criterion is satisfied. *Hall v. Heckerman*, 2000 MT 300, ¶ 15, 302 Mont. 345, ¶ 15, 15 P.3d 869, ¶ 15. This argument does not withstand analysis. We have held that "a third-party claimant who wishes to bring such an independent action under UTPA is required, by statute, to wait until 'after the underlying claim has been settled or a judgment [is] entered in favor of the claimant on the underlying claim.'" *Safeco Ins. Co.*, ¶ 28. If bad faith claims against the insurer can and "should" be litigated in the underlying negligence suit, a plaintiff who fails to litigate such claims at that level will be collaterally estopped from pursuing a UTPA claim. Such a result would be anomalous given that the UTPA does not allow claims to be filed until the claimant has either settled the underlying claim or obtained a verdict. Section 33-18-242(6)(b), MCA. Rhetorically, why would the UTPA allow bad faith claims to be filed only after settlement or judgment for the claimant if (as Continental posits) the claimant were required to already have litigated the issue of bad faith in the underlying suit? Since Graf's alleged UTPA violations were not issues which "could have been raised" in the negligence suit, there was no identity of issues.

¶23 We hold that the defense verdict in the underlying negligence suit does not collaterally estop Graf from pursuing a UTPA claim against Continental and MCS.

11

¶24   3. Did the District Court err in concluding that, since Graf failed to raise the issue of insurer misconduct in a Rule 60(b) motion in the underlying suit, she is now precluded from pursuing a UTPA claim?

¶25   The District Court held that:

> [T]he alleged misconduct that forms the basis of Graf's UTPA claim became known to Graf before she settled her underlying case. She could have brought these allegations of pre-trial and trial misconduct to the attention of the trial court by way of a Rule 60(b) motion. By settling the underlying case, Graf is estopped from using these allegations as a basis for a bad faith claim.

¶26   This conclusion suffers from the same fallacy set forth above–that is, the District Court mistakenly assumes that the allegations of UTPA violations are properly litigated in the underlying negligence suit.  The UTPA suit focuses on whether the insurer conducted a reasonable investigation and attempted in good faith to effectuate a prompt, fair and equitable settlement.  Section 33-18-201(4) and (6), MCA.  These are not issues which can or should be litigated in a negligence suit for personal injuries.

¶27   4.  Did the District Court err in finding that Continental concluded that the liability of its insured was not reasonably clear in part based upon the opinions of its trucking expert, Gene Breeden?

¶28   In its opinion, the District Court noted that Continental relied in part upon its trucking expert, who concluded that Armstrong was not at fault and did not cause the accident. Graf contends that this conclusion was in error because the record shows that Continental's beliefs as to liability were far from undisputed.  In response, Continental states that it has not argued, and the District Court did not rule, that Breeden's opinion provides an absolute

12

defense to Graf's UTPA claim. Rather, "[i]t is the jury's defense verdict, or in the alternative, collateral estoppel, that forms the basis of Continental's defense and the District Court's ruling." We agree with Continental that this appeal can be resolved by addressing the legal significance of the defense verdict, including the issue of collateral estoppel. We need not address the weight to be accorded to the expert testimony of Mr. Breeden.

¶29 Reversed and remanded for further proceedings consistent with this opinion.


/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ PATRICIA O. COTTER
/S/ JIM RICE

Justice John Warner specially concurring.

¶30    I agree with the result reached by the Court on Issue One, but for a different reason. The Court is correct in its conclusion at ¶ 15, that the issues in a UTPA claim are separate and distinct from the issues in the underlying suit. The issue in the underlying suit is the liability of the Defendant. In this UTPA claim the issue is whether an insurer and a claims service violated the statutes in failing to conduct a reasonable investigation and in failing to attempt in good faith to settle the claim when liability became reasonably clear. However, both the Defendants here, Continental Western and Montana Claims, along with the Court, analyze the matter in connection with the defense verdict, not the entry of a final judgment.

¶31    In my view, a final judgment that the insured in the underlying suit is not liable to the Plaintiff must have the result that as a matter of law, the insurer did not act unreasonably in refusing to settle the claim. Such is an important purpose of § 33-18-242(6)(b), MCA, which states:

> A third-party claimant may not file an action under this section until after the underlying claim *has been settled or a judgment entered in favor of the claimant* on the underlying claim. [Emphasis added.]

¶32    This statutory language, in my view, bars a third-party UTPA action if a final judgment is entered in favor of the defendant on the underlying claim. I cannot see how such a judgment in favor of the insured Defendant in the underlying action could be achieved without a reasonable investigation based upon all available information as required by § 33-18-201(4), MCA. Nor could liability be reasonably clear if a jury correctly determined that the insured was not liable. We have determined such to be the law.

14

> *Only* those third-party claimants who are able to achieve a settlement or prevail at trial may, in turn, bring an UTPA action - meaning meritless UTPA claims are theoretically extinguished before a claim is ever filed. This provision serves to both protect insurers from frivolous claims and facilitate judicial economy. [Emphasis added.]

*Safeco*, ¶ 28.

¶33 This necessarily means that those third-party claimants who are not able to prevail at trial cannot bring a UTPA action. Thus, the Court's statements at ¶ 15 that "A defense verdict in the negligence suit is not tantamount to a jury finding that the insurer did not violate the UTPA," and "[a]ccordingly, a jury verdict for the defense in the underlying suit does not, as a matter of law, establish a 'reasonable basis' defense under § 33-18-242(5), MCA," are technically correct, but are also misleading.

¶34 A jury verdict that results in a final judgment for the defense bars a subsequent UTPA action on the same claim as a matter of law. In this instance, the District Court's error was not in holding that a defense verdict in the underlying case bars a subsequent UTPA claim – but in holding that the verdict was the same as a final judgment. In this instance Plaintiff Graf appealed the judgment based upon the verdict. Graf contended for several reasons that the verdict was the result of error. Thus, the judgment and verdict were susceptible to being set aside as improperly entered. Both the verdict and the judgment would in such instance be of no consequence. *Central Montana Stockyards v. Fraser* (1957), 133 Mont. 168, 186, 320 P.2d 981, 991; *O'Brien v. Great Northern R.Co.* (1966), 148 Mont. 429, 440, 421 P.2d 710, 716. Before the judgment based on the jury's verdict became final, and before the appeal was dismissed, Graf was successful in achieving a settlement. Thus, her UTPA claim

15

remains within the ambit of § 33-18-242(6)(b), MCA, and summary judgment dismissing such claim is improper.

¶35 There is no question that the parties did not intend to foreclose a UTPA suit as part of the settlement agreement. The release specifically provided that it was not to be construed as indicating that any party prevailed on the merits of the underlying action.

¶36 The District Court was correct that the decision in this case acts as a disincentive for an insurance company to settle cases on appeal. Yet it is no more of a disincentive to settle than the rule that it is an unfair trade practice to condition a settlement of the underlying claim on a settlement of a UTPA action. *Shilhanek v. D-2 Trucking, Inc.*, 2003 MT 122, ¶ 19, 315 Mont. 519, ¶ 19, 70 P.3d 721, ¶ 19. In this instance Defendants opted to settle the underlying case, even though they were entitled to the presumption that the judgment of the District Court was correct. They necessarily did so in contemplation of defending a UTPA claim.

/S/ JOHN WARNER