JUSTICE NELSON,
specially concurring.
¶49 I agree with the Court that the District Court did not err in granting Capitol’s motion for summary judgment, and I agree with much of the Court’s analysis. However, I do not believe that the dispositive issue in this case and its proper resolution are made sufficiently clear in the Court’s Opinion. Thus, I write separately to clarify that issue and why summary judgment was proper.
¶50 The parties have expended a great deal of effort in the District Court and in this Court arguing about whether Dane’s death, in fact, involved more than one “occurrence” and whether the limit of Capitol’s liability arising out of Dane’s death is, in fact, $300,000.00. As a result, this case has taken on the appearance of a declaratory judgment action concerning the amount for which Capitol is liable in the Heggems’ separate actions against Bieber and Smith.[1] However, the questions of whether Dane’s death actually constitutes just one “occurrence” and *443 whether Capitol actually is liable for more than $300,000.00 are completely irrelevant in this case.
¶51 The Heggems brought this action under the Unfair Trade Practices Act (Title 33, Chapter 18, MCA; hereinafter, “UTPA”). Section 33-18-242(1), MCA, establishes a cause of action by an insured or a third-party claimant against an insurer for actual damages caused by the insurer’s violation of subsection (1), (4), (5), (6), (9), or (13) of § 33-18-201, MCA. Although the Heggems did not reference a specific subsection of § 33-18-201 in any of the three versions of their complaint, it is apparent from their pleadings that they were proceeding under subsection (1), which prohibits an insurer from “misrepresenting] pertinent facts or insurance policy provisions relating to coverages at issue.” Section 33-18-201(1), MCA. Indeed, they cite § 33-18-201(1) in their Response and Objection to Capitol Indemnity’s Motion for Summary Judgment.[2]
¶52 As we recently explained in Redies v. Attorneys Liability Protect. Soc., 2007 MT 9, 335 Mont. 233, 150 P.3d 930 (2007), a claim brought under the UTPA must be analyzed based on what the insurer knew at the time it allegedly violated the UTPA. See Redies, ¶¶ 29, 40; see also Graf v. Continental Western Ins. Co., 2004 MT 105, ¶ 17, 321 Mont. 65, ¶ 17, 89 P.3d 22, ¶ 17 (“The UTPA standards focus on what the insurer knows at a particular point in time-before trial, during the investigative settlement stage.”). Thus, a proper resolution of Capitol’s motion for summary judgment requires analysis of the following questions:
1. When did Capitol allegedly violate § 33-18-201(1)?
2. What did Capitol know (related to the coverages at issue) at that time?
3. What did Capitol represent at that time as the limits of liability under the coverages at issue?
4. Did this constitute a misrepresentation of pertinent facts or insurance policy provisions relating to the coverages at issue?
*444 5. Is Capitol entitled to summary judgment on the Heggems’ UTPA misrepresentation claim?
If the answer to any of the first four of these questions implicates a genuine issue as to a material fact, then summary judgment was improper. M. R. Civ. P. 56(c).
¶53 1. When did Capitol allegedly violate § 33-18-201(1)? Capitol allegedly misrepresented policy provisions during mid-2003, in the context of the Heggems’ negligence action against Bieber and Tiny Tots, which was filed on or about March 18, 2003. In particular, the Heggems identified in their Second Amended Complaint (with corresponding documentation attached to the complaint) three occasions on which Capitol had allegedly misrepresented policy provisions. First, the Heggems referenced an April 22,2003 letter from Capitol’s counsel to the Heggems’ counsel, in which Capitol’s counsel stated: “Please note that the business policy declarations indicate that $300,000.00 of limits exist for liability.” Second, the Heggems’ referenced Interrogatory No. 2 in their action against Bieber and Tiny Tots, which requested from Bieber and Tiny Tots “the limits of liability” for any “policy (policies) of insurance that you contend covered you on the dates described in the Complaint against the type of risk involved here.” Bieber’s April 30, 2003 response (which the Heggems alleged was made at the direction of Capitol) was that “the limits of liability’ were “$300,000.00.” Third, the Heggems referenced a July 25,2003 telephone conversation between Capitol’s counsel and the Heggems’ counsel, which Capitol’s counsel memorialized in a letter (dated that same day) as follows: “[Capitol] [was] prepared to and have asked me, on behalf of Sabine Bieber, to tender to you the sum of $300,000.00 which they believe is the total policy limit available on this case for liability and med pay.” (The Heggems initiated the instant UTPA action that same day, i.e., on July 25, 2003.)
¶54 2. What did Capitol know (related to the coverages at issue) during mid-2003? When it responded to Interrogatory No. 2, and at the time of the communications between counsel for the Heggems and counsel for Capitol, Capitol had been presented with the Heggems’ negligence claims against Bieber and Tiny Tots. In their complaint, the Heggems had alleged as follows:
1. To the defendant business, and owner, they trusted and entrusted, for day care, their beloved young son, Dane.
2. While in that care, in January, 2003, Dane, on those premises and under defendants’ care, became unresponsive; was airlifted to St. Vincent Hospital, and then died, on January 31, 2003.
*445 3. The State of Montana, and Yellowstone County authorities, after autopsy and investigation, have determined and written on Dane’s death certificate that his death was “homicide.”
4. The defendant business and owner, and each of them, had administered, negligently, and without the consent of Travis and Calista [Heggem], quantities of Benadryl to Dane, which Benadryl quantity caused his last illness, suffering, and death.
5. State of Montana authorities have determined and reported other children at Defendants’ day care were also given quantities of Benadryl, without the consent or knowledge of those children’s parents.
6. The negligent acts, as stated, of defendant day care and its owner, not only took Dane from Travis and Calista, as well as Dane’s entire family structure, but the circumstances are of such character as to also require the imposition, upon defendants, and both of them, of substantial punitive damages, to punish, and more importantly, deter any such other tragic breaches of duties owed to Parents, and their children, when entrusted to day care.
The Heggems requested compensatory damages “in all categories available under Montana law ... as a result of the circumstances surrounding the loss of their son, Dane”; punitive damages; and “[s]uch other relief as the Court deems just and proper.”
¶55 3. What did Capitol represent during mid-2003 as the limits of liability under the coverages at issue? $300,000.00.
¶56 4. Did this constitute a misrepresentation of pertinent facts or insurance policy provisions relating to the coverages at issue? No; for the reasons which follow, the Heggems have not shown that there is a genuine issue of material fact with respect to this question.
¶57 The policy states that the most Capitol will pay for loss or damage in any one “occurrence” is the applicable Limit of Insurance shown in the Declarations: $300,000.00. The most Capitol will pay for injury or damage arising from all “occurrences” during the policy period is twice this limit (i.e., $600,000.00). Under the “cause” theory of interpreting the term “occurrence” in an insurance liability policy that limits the insurer’s liability to a specified amount per “occurrence,” that term refers to the cause or causes of the damage or injury. See Opinion, ¶ 31. At the time of the alleged misrepresentations, Capitol had been presented with only one cause of Dane’s death: Bieber’s act of negligently administering diphenhydramine (Benadryl) to Dane. Thus, under the coverages then at issue, the limits of liability were $300,000.00.
*446 ¶58 The Heggems subsequently alleged that Smith’s failure to act to protect Dane was a separate cause of Dane’s death. See, e.g., Northwestern Nat. Cas. Co. v. Phalen, 182 Mont. 448, 455, 597 P.2d 720, 724 (1979) (“[T]he word ‘occurrence’ is in fact broader than the word ‘accident’ and is so intended by the insurer. In such case, the intent of the policy is to insure the acts or omissions of the insured.” (emphasis added)). However, the UTPA action is based on Capitol’s representations in mid-2003, before the Heggems alleged Smith as a separate cause.
¶59 In addition, the Heggems subsequently proffered a number of interpretations of “occurrence” in support of their position. These interpretations reflected several different theories of relief based on multiple alleged administrations of diphenhydramine by Bieber and multiple alleged failures of Smith to act to protect Dane, all over multiple policy periods. See Opinion, ¶¶ 23, 32, 36, 39, 43. However, the complaint against Bieber and Tiny Tots contains no alleged prior acts of negligence and corresponding injuries to Dane.[3] And there is nothing in the record of the communications in mid-2003 leading up to the filing of this UTPA action to suggest that the Heggems presented Capitol with such claims. To the contrary, the record discloses that these claims were articulated after the UTPA action had been filed.
¶60 The Heggems argued in their Response and Objection to Capitol Indemnity’s Motion for Summary Judgment that Capitol had misrepresented pertinent policy provisions by “miserably fail[ing] to identify at all the aggregate limit set forth in the policy.” Further, they accused Capitol and its counsel of “carefully isolating and exploiting the declarations page.” They acknowledged that the statement of Capitol’s counsel in the April 22,2003 letter-specifically, “[pjlease note that the business policy declarations indicate that $300,000.00 of limits exist for liability” (emphasis added)-was “technically true,” but they claimed that this statement “conceals the critical aggregate policy *447 provision and is therefore untrue at best.” The Heggems’ assertions overlook two critical facts.
¶61 First, the Heggems had full access to the insurance policy, which was provided to them with the letter from Capitol’s counsel dated April 22,2003. There is no indication in the record that Capitol withheld or “concealed]” pertinent provisions of the policy. Rather, the record and the allegations set forth in the Heggems’ Second Amended Complaint reveal that the Heggems simply did not bother to “scour[] the policy” until July 21 or 22, 2003.[4]
¶62 Second, and more importantly, § 33-18-201(1) prohibits an insurer from misrepresenting “pertinent” insurance policy provisions “relating to coverages at issue” (emphasis added). It does not require the insurer to recite, in response to an interrogatory requesting “the limits of liability,” every limit set forth in the policy; indeed, a statement that the Aggregate Limits amount is the limit of liability could be a misrepresentation if that coverage is not “at issue.” And while § 33-18-201(4) requires the insurer to conduct “a reasonable investigation based upon all available information” before refusing to pay a claim, § 33-18-201(1) does not require the insurer, when responding to the claimant’s inquiry as to the limits of liability, to conceive of every possible theory of relief the claimant may have, but has not yet articulated, and base its response on coverages that could be, but are not presently, at issue. Rather, § 33-18-201(1) requires the insurer to be forthcoming, truthful, and accurate with respect to “pertinent” insurance policy provisions relating to coverages “at issue.” Cf. Black’s Law Dictionary 1016 (Bryan A. Garner ed., 7th ed., West 1999) (defining “misrepresentation” as “a false or misleading statement about something” or “an assertion that does not accord with the facts”).
¶63 In this regard, six months after Capitol made the alleged misrepresentations, the Heggems stated in their January 13, 2004 Response and Objection to Capitol Indemnity’s Motion for Summary Judgment that “the Heggems have just begun to piece together what happened to Dane over many months at Tiny Tots. Those facts must drive application of insurance nolicv language.” This latter statement is certainly trae. It would be unreasonable, then, to expect Capitol to base its answer to Interrogatory No. 2 on facts that were neither *448 presented to it nor implicated by the Heggems’ allegations and claims against Bieber and Tiny Tots. To be sure, Capitol itself could have ascertained-indeed, it may have done so-that Smith’s supposed failure to protect Dane was a separate cause of Dane’s death. See, e.g., Ariz. Prop. & Cas. Ins. Guar. Fund v. Helme, 735 P.2d 451, 458 (Ariz. 1987). But § 33-18-201(1) does not require an insurer, when responding to a “limits of liability” interrogatory in a negligence action, to formulate its response based on potential tortfeasors who are not named as defendants.
¶64 5. Is Capitol entitled to summary judgment on the Heggems’ UTPA misrepresentation claim? The only remaining question is whether summary judgment in favor of Capitol was proper. As just explained, during the period in which the alleged misrepresentations were made, Capitol’s liability under the policy was premised on only one cause of Dane’s death: Bieber’s act of negligently administering diphenhydramine to Dane on January 31, 2003. Under the “cause” theory of interpreting the term “occurrence,” this one cause constitutes one “occurrence.” Therefore, Capitol’s statements that the limits of liability were $300,000.00 under the coverages then at issue were not misrepresentations. Accordingly, because there is no genuine issue as to any material fact on the question of whether “$300,000.00” constitutes a misrepresentation of the policy provisions by Capitol, and because Capitol is entitled to judgment as a matter of law on the Heggems’ UTPA misrepresentation claim, summary judgment for Capitol on that claim was proper.
¶65 In granting summary judgment to Capitol, the District Court concluded as follows: “This Court concludes that the Aggregate Limits provision of the policy is not invoked under the circumstances and Capitol Indemnity is entitled to judgment as a matter of law.” In reaching this conclusion, the court reasoned that “[caselaw] supports Capitol Indemnity’s position that Dane’s death was the result of a single cause constituting a single occurrence and that such occurrence gave rise to all damages regardless of the number of claims made or suits brought.” Further, the court reasoned that “[t]he Heggems have not shown that more than one occurrence has taken place under the circumstances for purposes of avoiding summary judgment.” However, the questions of whether Dane’s death actually was the result of a single cause, whether Capitol actually was liable for only one “occurrence,” and whether the Heggems’ various claims against Bieber, Tiny Tots, and Smith actually trigger the Aggregate Limits provision *449 are completely irrelevant-and are not capable of being resolved-in this UTPA action.
¶66 For one thing, at the time the District Court entered its order on March 15, 2004, a verdict had not been handed down in either of the negligence actions arising out of Dane’s death. Thus, the District Court could not state at this juncture that Bieber’s administration of the diphenhydramine was, in fact, the “cause” of Dane’s death. That is an element of the tort claim against Bieber, which had yet to be proven. Furthermore, there may have been another cause of Dane’s death, as alleged in the Heggems’ negligence action against Smith for her failure to act to protect Dane. The District Court’s suggestion that Dime’s death was the result of a “single” cause, therefore, was inappropriate. Lastly, the Heggems did not need to show in this UTPA case that more than one “occurrence” had taken place under the circumstances of Dane’s death. Rather, they needed to show that at the time of Capitol’s alleged misrepresentations, they had presented Capitol with facts or allegations implicating more than one occurrence. They did not make this showing.
¶67 Accordingly, to the extent the District Court purported to issue a ruling in favor of Capitol’s position “that Dane’s death was the result of a single cause constituting a single occurrence and that such occurrence gave rise to all damages regardless of the number of claims made or suits brought,” the court erred. However, because summary judgment was proper in this case-because Capitol did not, during the communications at issue here, misrepresent the limits of liability under the coverages then at issue as $300,000.00-the District Court reached the correct result.
¶68 On this basis, I concur in this Court’s decision.
JUSTICE COTTER joins in the special concurrence of JUSTICE NELSON.

 In this regard, the Heggems asserted in their Second Amended Complaint that “this is not an action for a ‘declaratory judgment’ regarding policy language.” Yet, on appeal, they “ask this Court for a determination that the Capitol policies at issue afford coverage for the Heggems’ claims in the amount of $1,200,000.00, as a matter of law.”

 The Heggems also asserted in their Second Amended Complaint that “[t]he totality of the circumstances that [Capitol] has created in this case ... also violates the Montana Consumer Protection Act, § 30-14-101 et seq., MCA, and constitutes unlawful and deceptive practices under § 30-14-103, MCA.” Section 30-14-133(1), MCA, establishes a private cause of action for violation of the Consumer Protection Act. However, in their Response and Objection to Capitol Indemnity’s Motion for Summary Judgment, the Heggems characterized the instant action as one brought under the UTPA; and on appeal, they neither mention the Consumer Protection Act nor raise a challenge pertaining to their allegations under that Act. Thus, we need not address it.

 In their Second Amended Complaint in the instant action, the Heggems allege that their complaint against Bieber and Tiny Tots in the negligence action was “plead in broad terms so as to fully invoke all available claims under Montana law.” Yet, while plaintiffs are generally not subject to any technical pleading requirements and complaints must be construed broadly in the plaintiffs favor, Zempel v. Liberty, 2006 MT 220, ¶¶ 16, 17, 333 Mont. 417, ¶¶ 16, 17, 143 P.3d 123, ¶¶ 16, 17, the Heggems’ complaint against Bieber and Tiny Tots only references the administration of diphenhydramine on January 31,2003, which caused Dane’s “last illness, suffering, and death” (emphasis added), and requests compensatory damages “as a result of the circumstances surrounding the loss of their son, Dane” (emphasis added). This cannot fairly be read to raise claims arising out of Bieber’s actions (and Smith’s omissions) in 2002.

 In a letter from the Heggems’ counsel to Capitol’s counsel, dated July 22, 2003, the Heggems’ counsel states that he is “more than a bit taken aback at what we have discovered, during the past 24 hours’-namely, “that the true policy coverage for this tragic incident, and life-scarring event, is $600,000” (based on the Aggregate Limits provision).