FILED

August 24 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 09-0500

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 187

LON PETERSON,

      Plaintiff, Appellant and Cross-Appellee,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

      Defendant, Appellee and Cross-Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DV 07-789
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Alexander (Zander) Blewett, III (argued), Kurt M. Jackson (argued),
Hoyt & Blewett, PLLC, Great Falls, Montana

      For Appellee:

            Guy W. Rogers (argued), Matthew I. Tourtlotte, Brown Law Firm,
Billings, Montana

      For Amicus:

            Jon T. Dyre, Crowley Fleck PLLP, Billings, Montana
(for the American Insurance Association)

Argued and Submitted: April 21, 2010

Decided: August 24, 2010

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Lon Peterson (Peterson) appeals from a jury verdict in the Eighth Judicial District Court. The jury determined that defendant St. Paul Fire & Marine Insurance Company (St. Paul) did not violate the Montana Unfair Trade Practices Act (UTPA), Title 33, chapter 18, MCA, as alleged by Peterson. We reverse the jury's verdict and remand for a new trial in a manner consistent with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 In June 2004, Peterson was involved in a head-on automobile accident with St. Paul's insured Michael Lindberg (Lindberg). The accident occurred on a dirt road in Glacier County. The road did not have a marked centerline or a posted speed limit. Peterson and Lindberg struck each other as they approached a blind curve in the road from opposite directions. Officers from the Montana Highway Patrol responded to the accident but did not issue a citation to either Lindberg or Peterson. However, immediately after the accident Lindberg reported to one of the officers that his cell phone had rung right before the accident. The officer noted that the cell phone was a contributing factor to the accident. This information was recorded in an accident report prepared by the Montana Highway Patrol. Peterson suffered broken ribs and injuries to his left knee and left hip as a result of the accident.

¶3 At the time of the accident, Lindberg was working for Omimex Canada, Ltd., a Canadian company operating in Montana and insured by St. Paul. After the accident, St. Paul opened a claims file on the matter, conducted an investigation, and evaluated the relative liability of Lindberg and Peterson. St. Paul ultimately hired an accident

2

reconstruction expert, Dr. F. Denman Lee (Dr. Lee), who concluded that Peterson was in Lindberg's lane of traffic at the time of the accident. St. Paul eventually concluded that Peterson was responsible for the accident, and contends that it never conclusively determined the accident was a result of Lindberg's negligence. St. Paul denied liability on behalf of its insured and refused to pay Peterson's claims. Peterson states that his medical bills exceeded $68,000 within months of the accident.

¶4 In June 2005, Peterson filed suit against Omimex in federal district court in Great Falls, Montana. St. Paul hired Great Falls attorney Bill Gregoire (Gregoire) to defend Omimex. In December 2005, Peterson slipped and fell at his home as a result of his weakened condition, injuring himself further and arguably increasing St. Paul's exposure for the accident. Peterson eventually offered to settle his claims for $1.8 million dollars. St. Paul responded with an offer of $850,000. Peterson initially rejected this offer, but later agreed to accept if made in the form of an offer of judgment. In May 2007, St. Paul made an offer of judgment to Peterson for $850,000, which was accepted. On June 17, 2007, roughly three years after the accident, the federal district court entered the judgment against Omimex.

¶5 On June 19, 2007, Peterson filed a third-party bad faith insurance claim in Cascade County District Court against St. Paul. Peterson alleged that St. Paul's denial of liability and its refusal to settle Peterson's claims for almost three years constituted a violation of the UTPA, and specifically § 33-18-201(6), MCA, which prohibits insurers from "neglect[ing] to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear . . . ." Peterson

3

alleged that liability for the accident had been reasonably clear, yet St. Paul had refused to promptly settle his claim. Peterson also alleged that St. Paul failed to conduct a reasonable investigation of the underlying accident as required under § 33-18-201(4), MCA.

¶6 St. Paul answered and denied the allegations. During discovery, Peterson obtained the claims file from St. Paul. Based on a review of the claims file, Peterson concluded that Gregoire and the claims adjusters who worked on the case had determined that Lindberg was at least 50% liable for the accident. Since a determination of at least 50% liability would mean that Lindberg would ultimately be liable for the accident under principles of comparative negligence pursuant to § 27-1-702, MCA,[1] Peterson contended that St. Paul had in fact determined that liability for the accident was "reasonably clear," yet wrongfully refused to pay his claims. St. Paul disputed these contentions. St. Paul conceded that there was mention of 50-50 liability in the claims file, but argued it never conclusively determined that Lindberg was at least 50% liable. Instead, based on the investigations conducted by its claims adjusters and the findings of Dr. Lee, St. Paul continued to assert that Peterson had caused the accident by driving over the centerline of the dirt road into Lindberg's lane.

¶7 St. Paul filed a motion for summary judgment, arguing that Lindberg's liability was never "reasonably clear." The District Court denied the motion, and also held that

---

[1] "Contributory fault does not bar recovery in an action by a person or a person's legal representative to recover tort damages for death of a person or injury to a person or property if the contributory fault was not greater than the fault of the defendant or the combined fault of all defendants and nonparties, but damages allowed must be diminished in proportion to the percentage of fault attributable to the person recovering." Section 27-1-702, MCA.

St. Paul's offer of judgment was not an admission of reasonably clear liability in the underlying case. Prior to trial, Peterson moved for a preliminary ruling that 50% negligence on behalf Lindberg for the accident constitutes liability for St. Paul as a matter of law, and would therefore constitute "reasonably clear liability" under the UTPA. The District Court denied Peterson's motion, holding that the issue of reasonably clear liability should be decided by the jury. The District Court prohibited Peterson from arguing to the jury that a finding of 50-50 negligence between Lindberg and Peterson would constitute negligence as a matter of law.

¶8 Peterson also sought an order in limine prohibiting St. Paul from relying on prejudicial and inadmissible evidence to justify its denial of liability and refusal to promptly and fairly settle his claim. Specifically, Peterson sought an order prohibiting any evidence that neither driver received a citation for the accident, whether the Highway Patrol could determine a point of impact for the accident, and whether Peterson "habitually" drove in the center of the road. The District Court denied the motion.

¶9 Additionally, Peterson filed a pretrial motion in limine arguing that Gregoire acted as St. Paul's agent in his defense of the underlying federal court negligence suit. Peterson contended that St. Paul was vicariously responsible for Gregoire's post-filing conduct which perpetuated St. Paul's pre-filing denial of all liability and its refusal to settle. The District Court denied this motion as well and also refused a related jury instruction on this issue.

¶10 A jury trial on Peterson's UTPA claims was held on August 17-21, 2009. The jury heard testimony from Peterson, Lindberg, and Gregoire, and other lay witnesses.

5

Richard Allums (Allums) and Dale Reed (Reed), claims adjusters for St. Paul, testified as well. Additionally, plaintiff's expert Rick Anderson (Anderson) testified about standards used by insurance companies when adjusting and investigating claims. The District Court did not allow St. Paul's accident reconstruction expert Dr. Lee to testify at trial.

¶11 During the settlement of jury instructions, the District Court refused the following proposed jury instruction requested by Peterson: "Under the Montana Unfair Trade Practices Act, liability in a claim is reasonably clear if the defendant insured's negligence is 50% or greater." The District Court ultimately gave the following jury instructions covering the contested issue of reasonably clear liability in this case:

### INSTRUCTION NO. 8

When liability for a car accident is reasonably clear and it is reasonably clear that a medical expense and/or economic loss are causally related to the accident in question, an insurance company has an obligation under the Montana Unfair Trade Practices Act to promptly pay those medical expenses and economic losses.

### INSTRUCTION NO. 9

Liability need not be certain in order to be reasonably clear.

### INSTRUCTION NO. 12

In order to assist you in your determination as to whether liability was reasonably clear you are instructed that:

Every person is responsible for injury to the person [or property] of another, caused by his/her negligence. Negligence is the failure to use reasonable care. Negligence may consist of action or inaction. A person is negligent if he/she fails to act as an ordinarily prudent person would act under the circumstances.

Negligence on the part of the plaintiff does not bar his/her recovery unless such negligence was greater than the negligence of the defendant. However, the total amount of damages that plaintiff would otherwise be

6

entitled to recover will be reduced by the court in proportion to the amount of negligence attributed to the plaintiff.

¶12 Peterson also sought a jury instruction that stated Lindberg was required to operate his motor vehicle at a "reasonable and prudent" speed under the circumstances, since the dirt road where the accident happened did not have a posted speed limit. Peterson contended at trial that Lindberg was driving from 40-55 m.p.h., while Peterson was travelling between 10-15 m.p.h. The District Court refused to give this instruction. Additionally, Peterson sought an instruction cautioning the jury that the lack of citations for the accident would not have been admitted in the underlying negligence suit. The District Court rejected this instruction as well, concluding it was not relevant to the jury's determination of whether St. Paul violated the UTPA.

¶13 The jury ultimately returned an 8-4 defense verdict for St. Paul, concluding that St. Paul did not violate the UTPA in its handling of Peterson's claim. This appeal timely followed. St. Paul has also filed a cross-appeal, challenging the denial of its motion for summary judgment, the District Court's decision to allow Anderson to testify, and its decision to prohibit the testimony of Dr. Lee. We state the issues on appeal as follows:

¶14 **Issue One:** *Did the jury instructions covering the issue of "reasonably clear liability" fully and fairly inform the jury of the applicable law?*

¶15 **Issue Two:** *Did St. Paul's offer of judgment in the underlying negligence suit constitute an admission of liability, and therefore "reasonably clear liability," as a matter of law?*

7

¶16    **Issue Three:** *Did the District Court abuse its discretion by allowing St. Paul to present prejudicial and inadmissible evidence at trial?*

¶17    **Issue Four:** *Did the District Court abuse its discretion when it refused Peterson's "reasonable and prudent" speed instruction, and an instruction regarding the inadmissibility of the lack of traffic citations in the underlying negligence suit?*

¶18    **Issue Five:** *Did the District Court abuse its discretion by refusing to instruct the jury on Peterson's theory that Gregoire acted as St. Paul's agent in the denial of his claim?*

¶19    We also address the following issues presented by St. Paul's cross-appeal:

¶20    **Issue Six:** *Did the District Court abuse its discretion in allowing Anderson to testify at trial?*

¶21    **Issue Seven:** *Did the District Court abuse its discretion when it prohibited the testimony of Dr. Lee?*

## STANDARD OF REVIEW

¶22    We review for an abuse of discretion whether the district court correctly instructed the jury. *State v. Thorp*, 2010 MT 92, ¶ 32, 356 Mont. 150, 231 P.3d 1096. The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *Tarlton v. Kaufman*, 2008 MT 462, ¶ 19, 348 Mont. 178, 199 P.3d 263. "[W]hile a district court has broad discretion to formulate jury instructions, 'that discretion is limited by the overriding principle that jury instructions must fully and fairly instruct the jury regarding the applicable law.' " *Tarlton*, ¶ 19 (quoting *State v. Miller*,

8

2008 MT 106, ¶ 11, 342 Mont. 355, 181 P.3d 625). Accordingly, when considering the jury instructions given by the district court, we review them in their entirety in order to determine if they fully and fairly instruct the jury on the law applicable to the case. *Tarlton*, ¶ 19; *Thorp*, ¶ 32. "Further, the party assigning error to a district court's instruction must show prejudice in order to prevail, and prejudice will not be found if the jury instructions in their entirety state the applicable law of the case." *Tarlton*, ¶ 19 (quotation omitted).

¶23 The admissibility of evidence is within the sound discretion of the district court and will not be reversed absent a showing of an abuse of discretion. *State v. Nelson*, 2002 MT 122, ¶ 9, 310 Mont. 71, 48 P.3d 739 (citing *State v. Stewart*, 253 Mont. 475, 479, 833 P.2d 1085, 1087 (1992)).

¶24 **Issue One:** *Did the jury instructions covering the issue of "reasonably clear liability" fully and fairly inform the jury of the applicable law?*

¶25 Peterson contends the District Court abused its discretion when it refused his proposed instruction on the issue of reasonably clear liability. Peterson argues that 50-50 negligence constitutes reasonably clear liability as a matter of law under the UTPA and Montana's law on comparative negligence. If a defendant is 50% or more negligent, then the plaintiff is entitled to recover damages from him with the amount reduced in direct proportion to the plaintiff's own negligence pursuant to § 27-1-702, MCA. *See Marry v. Missoula Co. Sheriff's Dept.*, 263 Mont. 152, 866 P.2d 1129 (1993). Peterson argues that the District Court's failure to legally define "reasonably clear liability" for the jury and give a corresponding instruction constitutes reversible error.

9

¶26 Peterson contends that he presented evidence demonstrating that St. Paul determined Lindberg to be at a minimum 50% responsible for the accident. Peterson argues he presented evidence demonstrating that Lindberg admitted to being distracted by his cell phone just prior to the accident in violation of Omimex's company policy. Peterson also argued that Lindberg's speed, which he placed between 40 and 55 m.p.h. at the time of the accident, was too fast for the blind curve where the accident happened. Peterson also questioned the credibility of St. Paul's accident reconstruction expert, Dr. Lee, claiming that his analysis yielded four conflicting scenarios. In one of them, Lindberg was approximately 20 inches into Peterson's lane at the time of the accident, while in the other three Dr. Lee concluded that Lindberg was properly in his lane. Peterson also argued that St. Paul knew that an accident reconstruction was of dubious value in determining liability, given that the accident was caused by Lindberg either reaching for or being distracted by his cell phone at the time of the accident.

¶27 Peterson also presented evidence from St. Paul's claims file, and examined both Allums and Reed about the findings contained therein. Peterson pointed to portions of St. Paul's liability evaluations which he argued demonstrated that St. Paul determined Lindberg to be at least 50% liable for the accident. Further, Peterson examined Gregoire at trial, and argued that his defense of Omimex demonstrated that Gregoire also concluded that Lindberg's liability was at least 50%. Based on this evidence and argument, Peterson contends the District Court abused its discretion in failing to instruct the jury as he requested.

¶28     St. Paul argues the District Court correctly instructed the jury and did not err when it denied Peterson's motion for a preliminary ruling on the issue of reasonably clear liability. St. Paul notes there was never an actual finding of negligence in the underlying action, and that the issue of actual responsibility for the accident is separate and distinct from whether it violated its duties to Peterson under the UTPA. St. Paul disputes Peterson's version of its claim adjusting process and the results of its liability evaluations, contending that it always considered Peterson primarily responsible for the accident. St. Paul asserts that while Allums initially suggested to St. Paul that it either settle the claim by accepting 50% liability, or obtain the assistance of an accident reconstruction expert, the results of the accident reconstruction and further investigation by Allums demonstrated that Peterson was in fact primarily responsible for the accident.

¶29     In sum, St. Paul contends that there was always a genuine dispute about liability. St. Paul explains that its decision to settle the case was not based on its conclusion that Lindberg was liable for the accident, but on other factors, such as the extent of Peterson's injuries and the fact that Omimex, as a foreign corporation, was a "target defendant." St. Paul claims that Gregoire always maintained he could win a defense verdict at trial, but suggested a settlement in view of these other considerations.

¶30     Additionally, St. Paul argues that the question of what constitutes "reasonably clear liability" under Montana law was already addressed in *Giambra v. Travelers Indemnity Co.*, 2003 MT 289, 318 Mont. 73, 78 P.3d 880. Under *Giambra*, St. Paul contends that liability is not "reasonably clear" when there exist genuine issues of material fact regarding negligence and liability, and that the issue of the reasonableness

11

of its handling of Peterson's claim is a question of fact for the jury. In this connection, St. Paul argues that the jury instructions given by the District Court in this case fully and fairly informed the jury of the applicable law and do not provide grounds for reversal.

¶31 The UTPA provides in part that an insurer may not "neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear . . . ." Section 33-18-201(6), MCA. The ultimate question for the jury was whether St. Paul violated the UTPA in its handling of Peterson's claim. In resolving this question, the jury is not asked to determine whether Lindberg or Peterson was actually liable for the underlying automobile accident. As we stated in *Graf v. Continental Western Ins. Co.*, 2004 MT 105, 321 Mont. 65, 89 P.3d 22, "[t]he issues in a UTPA claim are separate from the issues in the underlying claim." *Graf*, ¶ 12 (citing *Klaudt v. Flink*, 202 Mont. 247, 252-53, 658 P.2d 1065, 1067-68 (1983)). At the same time, there is an intimate connection between the facts of the underlying accident and the decisions made by St. Paul in the handling of the claim. Indeed, the operative facts of the accident, their legal consequences, the results of St. Paul's investigation into the accident, and St. Paul's conduct in handling Peterson's claim are indelibly intertwined with the question of whether liability was "reasonably clear" in this case.

¶32 Our caselaw under the UTPA has established that an insurer has a duty to provide coverage for an injured third party when liability for the underlying accident is "reasonably clear." *See Ridley v. Guaranty Nat. Ins. Co.*, 286 Mont. 325, 334, 951 P.2d 987, 992 (1997). Furthermore, our UTPA caselaw also makes it clear that the operative facts of the underlying accident, and the information available to the insurer during the

12

adjusting process, are probative as to the merits of the UTPA claim. *See Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶¶ 87-89, 345 Mont. 12, 192 P.3d 186. However, our caselaw has heretofore not provided a legal definition of "reasonably clear liability" in a manner applicable to the present circumstances.[2] While the issue of "reasonably clear liability" for the underlying accident was the linchpin of the entire case here, there is genuine uncertainty about the legal effect which the jury should attribute to the operative facts of the underlying accident as regards reasonably clear liability, and whether it should make a determination regarding negligence for the underlying accident and then compare its findings to those arrived at by St. Paul. The District Court was understandably concerned that the jury not re-litigate the underlying negligence suit in the UTPA case, and carefully crafted instructions which it believed appropriately instructed the jury as to reasonably clear liability. At the same time, the instructions given by the District Court, and the evidence allowed at trial, demonstrate that the facts of the accident and general principles of negligence law were necessary for the jury to make its determination regarding reasonably clear liability.

¶33 Jury instructions must fully and fairly inform the jury of the law applicable to the case. *Tarlton*, ¶ 19. "[T]he only purpose which is properly served by the instructions to the jury is 'to assure a decision consistent with the evidence and the law' and . . . this can

---

[2] *Giambra*, a case relied upon by St. Paul, dealt with the narrow issue of whether there were genuine issues of material precluding summary judgment as to whether liability for an accident was reasonably clear. *Giambra*, ¶ 16. *Giambra* provides no guidance here, because the issue in this case is not whether there are genuine issues of material fact precluding summary judgment, but instead what legal standard should guide the jury when applying the disputed facts regarding liability to the law under the UTPA.

only be accomplished 'when the instructions are as plain, clear, concise, and as brief as possible.' " *McAlpine v. Rhone-Poluenc AG Co.*, 2000 MT 383, ¶ 24, 304 Mont. 31, 16 P.3d 1054 (quoting *Busta v. Columbus Hosp. Corp.*, 276 Mont. 342, 373, 916 P.2d 122, 140 (1996)). Given that there necessarily exists some relationship between the underlying accident and the question of reasonably clear liability in this case, without a plain, clear and concise instruction explaining how these factors must be reconciled, the jury cannot make an informed determination of liability with respect Peterson's UTPA claim. *See Billings Leasing Co. v. Payne*, 176 Mont. 217, 225, 577 P.2d 386, 391 (1978) (stating that "[j]ury instructions are crucial to a jury's understanding of the case . . . ."). Accordingly, this Court must determine what legal standard should guide a jury's determination of reasonably clear liability. For guidance on this question, we turn to other jurisdictions which have directly considered this issue.

¶34 Like § 33-18-201(6), MCA, Massachusetts' unfair trade practices act prohibits insurers from failing "to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear . . . ." Mass. Ann. Laws ch. 176D, § 3(9)(f) (LEXIS 2010). In *Demeo v. State Farm Mut. Auto. Ins. Co.*, 649 N.E.2d 803 (Mass. App. 1995), the Appeals Court of Massachusetts held that a determination of whether liability is "reasonably clear" is an "objective test [which] calls upon the fact finder to determine whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff." *Demeo*, 649 N.E.2d at 804. Subsequent courts in both Massachusetts and the First Circuit adopted this as the applicable legal standard in the context of unfair trade

14

practices claims under Massachusetts law. *See e.g. Bolden v. O'Connor Café of Worcester, Inc.*, 734 N.E.2d 726, 732 n. 12 (Mass. App. 2000); *Foisy v. Royal Maccabees Life Ins. Co.*, 241 F. Supp. 2d 65, 68 (D. Mass. 2002); *Fed. Ins. Co. v. HPSC, Inc.*, 480 F.3d 26, 36 (1st Cir. 2007).

¶35    Subsequently, in *Jackson v. State Farm Mut. Auto. Ins. Co.*, 600 S.E.2d 346 (W. Va. 2004), the West Virginia Supreme Court of Appeals applied the Massachusetts approach to its unfair trade practices act. West Virginia's unfair trade practices act requires insurers to "attempt[] in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability ha[s] become reasonably clear . . . ." W. Va. Code, § 33-11-4(9)(f) (2004). In *Jackson*, plaintiff Jackson had pulled his car off to the side of the road and was subsequently struck by Teri Smoot, an insured of State Farm. Jackson submitted a claim to State Farm. State Farm denied the claim after conducting an investigation of the accident, initially concluding that Jackson was 100% liable, while Smoot's liability was 0%. *Jackson*, 638 S.E.2d at 350. Jackson filed a personal injury claim against Smoot, and an unfair trade practices act claim against State Farm. After the suits were filed, State Farm revised its evaluation of the accident, concluding that Smoot's fault was as high as 49%. In the personal injury action, a jury ultimately assessed Smoot's liability at 90% and Jackson's at 10%. *Jackson*, 600 S.E.2d at 351.

¶36    After the jury verdict in the personal injury suit, State Farm and Jackson moved for summary judgment in the unfair trade practices suit, which was still pending at that time. The lower court granted Jackson's motion, concluding that as a matter of law State Farm did not attempt in good faith to effectuate a prompt, fair, and equitable settlement

15

of his claim after liability had become reasonably clear. *Jackson*, 600 S.E.2d at 351. After the court's ruling, the jury ultimately returned a large verdict in Jackson's favor. State Farm appealed several aspects of the lower court's ruling, including its determination that State Farm had violated W. Va. Code, § 33-11-4(9)(f) as a matter of law. *Jackson*, 600 S.E.2d at 352.

¶37    In its conclusions of law, the lower court had concluded that "liability is reasonably clear when a reasonable person with knowledge of the relevant facts and law would have concluded[,] that it was more likely than not that the insured . . . was more than 50% at fault for the accident." *Jackson*, 600 S.E.2d at 352. The West Virginia Supreme Court of Appeals rejected this interpretation of "reasonably clear liability." The Supreme Court of Appeals concluded that the lower court impermissibly equated reasonably clear liability with a preponderance of the evidence standard, and had concluded in essence that a claimant would only have to establish that liability for the accident was "more likely" or more "probable than not." *Jackson*, 600 S.E.2d at 352. The Supreme Court of Appeals determined that "reasonably clear liability" required a greater degree of certainty than a preponderance of the evidence. It concluded that the burden of proof required for "reasonably clear liability" was more akin to the "clear and convincing evidence" standard, meaning that " 'the thing to be proved is highly probable or reasonably certain. This is a greater burden than preponderance of the evidence[.]' " *Jackson*, 600 S.E.2d at 352 (quoting *Black's Law Dictionary* 457 (5th ed. 1979)).

¶38    Additionally, the Supreme Court of Appeals cited with approval a Massachusetts lower court case for the proposition that " '[l]iability need not be absolutely certain, or

16

beyond reasonable doubt, but it must be 'clear' enough that reasonable people would agree about it. Put conversely, if there is room for objectively reasonable debate about whether liability exists, then it is not 'reasonably clear.' " *Jackson*, 600 S.E.2d at 352 (quoting *Am. Universal Ins. Co. v. Med. Malpractice Joint Underwriting Assn. of Mass.*, 1993 Mass. Super. LEXIS 149**62-63 (Mass. Super. 1993)). Based on this analysis, the West Virginia Supreme Court of Appeals expressly adopted the objective "reasonably clear" liability standard from *Demeo* noted above. *Jackson*, 600 S.E.2d at 352-53.

¶39    We agree with the courts of Massachusetts and West Virginia, and join them in adopting this standard. Accordingly, we hold that liability is "reasonably clear" when a reasonable person, with knowledge of the relevant facts and law, would conclude, for good reason, that the defendant is liable to the plaintiff. This is an "objective test" in which a trier of fact judges the reasonableness of the insurer's conduct under the facts and circumstances as presented. In addition to taking account of the relevant facts, the trier of fact is also to take account of the relevant legal principles to be considered by the insurer when evaluating liability. A finding of liability by a trier of fact under the preponderance of evidence standard in the negligence action does not necessarily imply that liability was "reasonably clear" when the insurer was adjusting the claim. Instead, "reasonably clear" liability is established when it is "clear enough" that reasonable people assessing the claim would agree on the issue of liability, and that the facts, circumstances, and applicable law leave little room for objectively reasonable debate about whether liability exists.

17

¶40 With these legal standards in mind, we turn to the jury instructions given in this case to determine whether they fully and fairly informed the jury of the applicable law. *See Opinion*, ¶ 11. Instruction No. 8 informed the jury of St. Paul's duty under the UTPA to pay claims and medical expenses when liability is reasonably clear. Instruction No. 9 informed the jury that liability does not need to be certain in order to be reasonably clear. Instruction No. 12 provided the jury with relevant principles of negligence law, including an instruction patterned on § 27-1-702, MCA. However, the instructions did not instruct the jury on critical legal aspects of the "reasonably clear liability" determination. It is unclear from these instructions whether the jury was charged to vicariously determine negligence for the underlying accident and then determine whether liability was "reasonably clear," or whether the jury was simply supposed to evaluate the insurer's conduct from an objective, reasonable person standard, without necessarily arriving at a determination of who was ultimately negligent under the preponderance of the evidence standard. While the general principles of negligence law provided in Instruction No. 12 are important to guide the jury's evaluation of St. Paul's conduct, without another instruction defining "reasonably clear liability" and focusing the jury on an objective evaluation of the reasonableness of St. Paul's conduct, we simply cannot conclude that the jury was fully and fairly informed of the applicable law.

¶41 The issue of "reasonably clear liability" was the linchpin of Peterson's entire case, and the lack of clarity in these instructions regarding the reasonableness of St. Paul's conduct in its handling of Peterson's claim left the jury without guidance on how to determine whether liability was reasonably clear. Without a jury instruction reflecting

18

the legal standards as set forth in *Demeo* and *Jackson*, we conclude the jury instructions, taken as a whole, did not fully and fairly instruct the jury that it must evaluate St. Paul's conduct under an objective standard of reasonableness and determine whether liability was reasonably clear to St. Paul when it handled Peterson's claim. This question is so fundamental to a case of this nature that without an instruction patterned on this legal standard a jury is simply not in a position to make its determination on the ultimate question of law presented by this case.

¶42    We fully realize that the District Court did not have the benefit of the foregoing legal analysis. However, the district court has an overriding duty to ensure the jury is properly instructed, even in cases where failure to properly instruct the jury is arguably the fault of the parties themselves. *See Billings Leasing Co.*, 176 Mont. at 225, 577 P.2d at 391 (emphasis in original, quotation omitted) ("It is the inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case, and to guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for truth. *The court must instruct the jury properly on the controlling issues in the case . . . .*"); *Schuff v. Jackson*, 2002 MT 215, ¶¶ 38-39, 311 Mont. 312, 55 P.3d 387; *State Bank of Townsend v. Maryann's, Inc.*, 204 Mont. 21, 30-31, 664 P.2d 295, 299-300 (1983). Furthermore, the discretion of the district court to give or refuse jury instructions is always subject to the overriding requirement that they fully and fairly instruct the jury on the applicable law. *State v. Kramp*, 200 Mont. 383, 396, 651 P.2d 614, 621 (1982); *Dale v. Three Rivers Telephone Cooperatives, Inc.*, 2004

MT 74, ¶¶ 15-16, 320 Mont. 401, 87 P.3d 489; *McAlpine*, ¶¶ 25-26; *Tarlton*, ¶¶ 24, 28-30.

¶43 We conclude that the jury instructions given here as a whole did not fully and fairly inform the jury of the applicable law. Although the District Court made an earnest attempt to formulate jury instructions which would adequately instruct the jury on the question of reasonably clear liability, its formulation was ultimately incomplete. Because the error in the jury instructions affects the jury's ability to make the ultimate determination at issue of whether St. Paul violated the UTPA as alleged by Peterson, we conclude that this error has prejudiced Peterson's substantial right to a fair trial. *Tarlton*, ¶ 19. Accordingly, the jury's verdict must be reversed and this matter remanded for a new trial. *See Williams v. Union Fidelity Life Ins. Co.*, 2005 MT 273, ¶ 46, 329 Mont. 158, 123 P.3d 213; *Fillinger v. Northwestern Agency, Inc., of Great Falls*, 283 Mont. 71, 76, 938 P.2d 1347, 1350-51 (1997).

¶44 Furthermore, we offer the following jury instruction for use by the District Court in this case, and in any other insurance bad faith case where the jury is being asked to decide whether liability is reasonably clear:

> You must decide whether [insurance company] engaged in an unfair trade practice by not making a good faith attempt to bring about a prompt, fair, and equitable settlement of a claim in which liability was reasonably clear.
> To determine if liability was reasonably clear, you must decide whether a reasonable person, with knowledge of the relevant facts and law, would have concluded for good reason that [defendant] was liable to [plaintiff]. In doing so, you should take into account that, under Montana law, if [defendant] was 50% or more negligent, then [plaintiff] would be entitled to recover damages from [defendant], even if [plaintiff] was partially negligent.

20

So, you must determine in this case whether a person, with knowledge of the relevant facts and law, would have concluded for good reason that [defendant] was 50% or more negligent.

¶45 Before concluding, one last observation about jury instructions is in order. When a district court decides to give or refuse jury instructions, it bears two sets of considerations in mind. First, it must consider whether the instructions as a whole fully and fairly inform the jury of the applicable law. Second, it must exercise its discretion and decide whether the requested instruction is warranted under the circumstances. The first determination undoubtedly presents the reviewing court with a *legal determination* made by the lower court. Such legal determinations are reviewed either for correctness or de novo. *See Citizens Awareness Network v. Mont. Bd. of Envtl. Rev.*, 2010 MT 10, ¶ 13, 355 Mont. 60, 227 P.3d 583 (quotation omitted, alteration in original) ("[N]o discretion is involved when a tribunal arrives at a conclusion of law—the tribunal either correctly or incorrectly applies the law."); *State v. Derbyshire*, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811 (citations omitted) ("A trial court has broad discretion in determining the relevance and admissibility of evidence. Thus, as a general rule, we review a trial court's evidentiary rulings for abuse of discretion. . . . In exercising its discretion, however, the trial court is bound by the Rules of Evidence or applicable statutes. Thus, to the extent the court's ruling is based on an interpretation of an evidentiary rule or statute, our review is de novo."). The second determination, on the other hand, is discretionary in nature and separate and distinct from the legal conclusions expressed by the lower court in its instructions. This discretionary determination is based on a number of considerations including, but not limited to, whether the party requesting

21

the instruction has presented sufficient evidence to receive the instruction, whether the instruction is relevant in light of the theory of the case, or whether the instruction will unduly confuse the jury. In this case, the District Court clearly had before it sufficient evidence to submit the reasonably clear liability question to the jury, and the instructions on this issue were both relevant and required. Therefore, the District Court was acting within its sound discretion when it decided to instruct the jury on this issue. However, the instructions which it ultimately gave were simply not correct or complete on the issue of reasonably clear liability as a matter of law.

¶46 Although we are reversing and remanding based on our analysis of the jury instructions, we will now address the other issues raised by the parties in order to assist the District Court in the event of a retrial.[3]

¶47 **Issue Two:** *Did St. Paul's offer of judgment in the underlying negligence suit constitute an admission of liability, and therefore "reasonably clear liability," as a matter of law?*

¶48 Peterson argues the District Court erred when it concluded as a matter of law that St. Paul's offer judgment in federal district court did not constitute an admission of liability for the accident, and therefore "reasonably clear liability," as a matter of law. Peterson argues that St. Paul's F. R. Civ. P. 68 offer of judgment unconditionally resolved all issues of liability adversely to St. Paul, including the UTPA claims. He

---

[3] In its cross-appeal, St. Paul argues the District Court erred in denying its motion for summary judgment on the issue of reasonably clear liability. St. Paul's cross-appeal on this issue is denied based on our decision to adopt an objective, reasonable person standard for assessing reasonably clear liability.

22

further contends the F. R. Civ. P. 68 offer of judgment estops and precludes any ancillary action covered by the judgment, and is res judicata against St. Paul in the UTPA action.

¶49 The District Court's conclusion of law on this issue is reviewed de novo to determine if it was correct. *Shults v. Liberty Cove, Inc.*, 2006 MT 247, 334 Mont. 70, 146 P.3d 710. Federal caselaw makes it clear that an offer of judgment under F. R. Civ. P. 68 does not necessarily constitute an admission of liability; instead, whether an offer amounts to such an admission is a function of the actual language of the settlement offer itself. *See e.g. Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1243 (11th Cir. 2009); *Martin v. PPP, Inc.*, 2010 U.S. Dist. LEXIS 63192**13-14 n. 3 (N.D. Ill. 2010) ("It is well-settled . . . that even offers under Rule 68 are not required to contain admissions of liability."); *Walsh v. Boston U.*, 661 F. Supp. 2d 91, 97 (D. Mass 2009).

¶50 The offer of judgment in this case was admitted at trial, and is silent as to whether it constitutes an admission or denial of liability for the underlying accident. The jury was entitled to consider this evidence, and weigh its effect on the issue of reasonably clear liability. But even if St. Paul's offer of judgment in the federal court case was construed as an admission of liability, it simply does not have preclusive effect in the UTPA case because the issues in a UTPA case are distinct from those of the underlying suit. *Graf*, ¶ 12. Issue identity is one of the required elements in order to invoke the doctrines of collateral estoppel or res judicata. *Baltrusch v. Baltrusch*, 2006 MT 51, ¶¶ 15-16, 18, 331 Mont. 281, 130 P.3d 1267. Accordingly, we conclude that while an F. R. Civ. P. 68 offer of judgment may under some circumstances constitute an admission of liability for the

23

underlying accident, it does not constitute an admission of "reasonably clear liability" with respect to Peterson's UTPA claims.

¶51  **Issue Three:** *Did the District Court abuse its discretion by allowing St. Paul to present prejudicial and inadmissible evidence at trial?*

¶52  Peterson argues the District Court abused its discretion when it allowed St. Paul to present the following evidence at trial: (1) evidence of a lack of traffic citations; (2) evidence from responding Montana Highway Patrol officers regarding the point of impact of the accident; and (3) testimony about Peterson's prior driving activity. Peterson argues that the federal district court prohibited such evidence in the negligence suit, and that the District Court's admission of this evidence in the UTPA case was directly contrary to *Britton v. Farmers Ins. Group*, 221 Mont. 67, 721 P.2d 303 (1986).

¶53  In *Britton*, we held that while an insurer may utilize inadmissible facts or evidence to develop admissible evidence, it acts unreasonably if it declines payment of a claim "merely upon inadmissible evidence or testimony." *Britton*, 221 Mont. 86-87, 721 P.2d at 316. Here, the evidence in question was not the sole basis for the denial of the claim; rather, it was evidence contained in the insurer's file which, along with other evidence, informed St. Paul's decision. In *Lorang*, we said that the information in the insurer's records is critical in determining whether a UTPA violation has occurred. *Lorang,* ¶ 88. This is just such information. *Britton* did not abrogate a district court's discretion regarding the admissibility of evidence in a bad faith case; it merely held that if an insurer has nothing more than inadmissible hearsay-type evidence upon which to deny a claim, it is likely acting in bad faith.

24

¶54 In light of the foregoing and our reasoning under Issue One, we find Peterson's argument unpersuasive. Whether or not such evidence would be admissible in the underlying negligence suit is beside the point when it comes to the jury's determination of whether St. Paul violated the UTPA. In making the UTPA determination, the jury is entitled to hear and see this information because it informed St. Paul's assessment and because the jury must determine whether a reasonable person, with knowledge of the relevant facts and law, would conclude, for good reason, that Lindberg was liable for the accident. *See also Lorang*, ¶¶ 87-89. It was therefore not an abuse of discretion for the District Court to admit this evidence, irrespective of whether it would have been admissible in the underlying negligence suit.

¶55 **Issue Four:** *Did the District Court abuse its discretion when it refused Peterson's "reasonable and prudent" speed instruction and an instruction regarding the inadmissibility of the lack of traffic citations in the underlying negligence suit?*

¶56 Peterson also asserts that the District Court abused its discretion when it refused to give the following proposed jury instructions:

### PROPOSED INSTRUCTION NO. 62

Subject to any maximum speed limits, a person shall operate a vehicle in a careful and prudent manner and at a reduced speed no greater than is reasonable and prudent under the circumstances existing at the point of operation, taking into account the amount and character of traffic, visibility, weather and roadway conditions.

### PROPOSED INSTRUCTION NO. 59

In considering any evidence that no traffic citations were issued to either Mr. Peterson or Mr. Lindberg as a result of the underlying automobile accident, you are instructed that the lack of any traffic citations does not equate to the lack of civil negligence. A traffic violation involves a criminal proceeding requiring proof beyond a reasonable doubt.

25

You are instructed that any evidence of the lack of traffic citations would not have been admissible to the jury in the underlying case.

¶57 Proposed instruction No. 62 was based on § 61-8-303, MCA. Proposed instruction No. 59 was offered to cure the perceived prejudice occasioned by the District Court's admission of evidence regarding the lack of traffic citations. The District Court rejected proposed instruction No. 59, stating that it was allowing the lack of citations as one piece of evidence as to what St. Paul knew at the time it was making its analysis of liability. The District Court rejected proposed instruction No. 62, stating it was concerned about creating "the dangerous situation" of the jury retrying the first case instead of considering the ultimate issue in the second case—i.e., the reasonableness of St. Paul's conduct.

¶58 The decision to deny these proposed instructions did not involve a legal determination by the District Court, but was instead based on its concerns that these instructions would confuse the jury and potentially prejudice St. Paul. Thus, unlike our analysis under Issue One, this decision is to be afforded much greater discretion. Given the latitude afforded the District Court in instructing the jury in light of such concerns, we conclude that the rejection of these instructions was not an abuse of the District Court's discretion. However, the court on remand should reassess the propriety of such instructions in light of our analysis under Issue One and the objective standard to be utilized by the jury in evaluating the reasonableness of St. Paul's conduct. Although the District Court's concerns about the jury litigating the negligence suit in the UTPA case were understandable, such concerns will be ameliorated by an objective, "reasonable

person" instruction on the issue of reasonably clear liability. Instructions and evidence that address the facts and law taken into consideration by the insurer will allow the jury to make a fully informed determination of this question.

¶59 **Issue Five:** *Did the District Court abuse its discretion by refusing to instruct the jury on Peterson's theory that Gregoire acted as St. Paul's agent in the denial of his claim?*

¶60 Finally, Peterson argues the District Court erred when it failed to conclude as a matter of law that Gregoire, who was hired by St. Paul to handle the defense of Omimex, was St. Paul's agent, and when it consequently refused to provide the jury with an instruction to that effect. Peterson contends this ruling allowed St. Paul to simultaneously disavow Gregoire's admissions that Lindberg could be found 50-70% negligent by a jury, while at the same time pointing to Gregoire's independent assertions that Lindberg's liability was not "reasonably clear" as a basis for denying payment of the claim. Essentially, Peterson argues that the court's rulings allowed St. Paul to shift its duties under the UTPA onto Gregoire by emphasizing it was Gregoire's decision—not St. Paul's—to deny liability and refuse to pay Peterson's claims, and allowed St. Paul to imply to the jury it had an unqualified right to rely on Gregoire and escape liability under the UTPA. Peterson asks this Court to hold as a matter of law that Gregoire's actions were legally attributable to St. Paul, that Gregoire's admissions of liability were binding on St. Paul, and that the District Court erred in failing to give a jury instruction on this point.

¶61 In response, St. Paul argues that under *In Re Rules*, 2000 MT 110, 299 Mont. 321, 2 P.3d 806, Gregoire could not be an "agent" of St. Paul because he owed a duty of

27

undivided loyalty to the insured Omimex, and was therefore operating independently from the control of St. Paul.

¶62    In *In Re Rules*, we concluded that defense counsel owes a duty of undivided loyalty to the insured under the Montana Rules of Professional Conduct. *In Re Rules*, ¶ 51. While *In Re Rules* made it clear that under the Rules of Professional Conduct "the insured is the sole client of defense counsel," *In Re Rules*, ¶ 38, we also stated the following:

> We caution, however, that this holding should not be construed to mean that defense counsel have a "blank check" to escalate litigation costs nor that defense counsel need not ever consult with insurers. Under Rule 1.5, M.R.Prof.Conduct, for example, an attorney must charge reasonable fees. *See* Rule 1.5, M.R.Prof.Conduct (providing in part that "[a] lawyer's fees shall be reasonable"). Nor, finally, should our holding be taken to signal that defense counsel cannot be held accountable for their work.

*In Re Rules*, ¶ 39.

¶63    Under *In Re Rules*, we conclude that the District Court did not err when it refused to determine as a matter of law that Gregoire was St. Paul's agent, nor did it abuse its discretion when it denied a jury instruction patterned on this argument. However, *In Re Rules* makes it clear that an insurer cannot simply foist its duties under the UTPA onto defense counsel, and that defense counsel, in turn, is under an obligation to consult with the insurer and should be held accountable for his or her work. Accordingly, on remand a careful reading of our decision in *In Re Rules* may provide some guidance to the parties if

they wish to propose an instruction clarifying for the jury the relationship among Gregoire, Lindberg, and St. Paul.[4]

¶64 **Issue Six:** *Did the District Court abuse its discretion in allowing Anderson to testify at trial?*

¶65 Peterson called Anderson as his first witness at trial. Anderson is a Montana attorney who works primarily in the area of insurance law. In his expert disclosure, Anderson stated that he would testify about industry standards which should be followed by insurance companies when handling personal injury claims in Montana. In particular, Anderson identified twelve standards on which he planned to present expert testimony. Anderson claimed these standards were followed by adjusters and insurance companies throughout Montana.

¶66 Prior to trial, St. Paul moved to strike Anderson's expert testimony on these standards. The District Court denied the motion, but stated Anderson would be required to lay a foundation for any expert opinion given at trial. Moreover, the court prohibited Anderson from testifying regarding opinions which constitute conclusions of law. The District Court specifically stated it would not allow Anderson to provide any opinion or analysis that applies the law to the facts of the case, or to testify as to whether St. Paul violated the UTPA in its handling of Peterson's claim.

---

[4] Unlike the "reasonably clear liability" instruction, which was central to the jury's determination, the District Court here would be under no requirement to give an instruction on Gregoire's relationship with Lindberg and St. Paul if Peterson fails to propose one which accurately reflects the law. Although a party is entitled to have instructions covering his theory of the case, "he is not entitled to an instruction concerning every nuance of his argument." *State v. Lantis*, 1998 MT 172, ¶ 48, 289 Mont. 480, 962 P.2d 1169 (citing *State v. Goulet*, 283 Mont. 38, 41, 938 P.2d 1330, 1332 (1997)).

29

¶67 At trial, Anderson testified in general about claims handling practices, his experience in the insurance field, and specifically about St. Paul's handling of Peterson's claim. Anderson based his testimony in large measure on the evidence contained in St. Paul's claims file. Anderson testified about seven of the standards of industry practice which he believed should be followed in the claims adjusting process. During his testimony, St. Paul objected to a question posed to Anderson about whether he had an opinion on whether St. Paul violated any of the industry standards he had identified. The District Court overruled the objection and cautioned the jury as follows:

> I'm going to allow the witness to testify to the—he's laid the foundation for the industry standards and that this is his version of those standards, and he can testify as to whether or not he believes that the insurance company comported with those standards.
>
> However, I'm going to caution the jury, I'm going to, at the end of the case, give you the law that indicates whether or not—you're going to have to apply to determine whether or not the defendant did conform with the law or not. The law may be different than these standards.
>
> So you're going to get the final instruction, which is going to tell you what the law is that you have to apply. I will allow the witness to testify and give you this information, and you're going to get an instruction in the settlement of instructions also that tells you how you can evaluate a witness' testimony and how you can apply that in making your decision, and that allows you a great deal of discretion, whether to take everything that they say or to take nothing that the expert says. The testimony is simply indicated to give you additional information that you can choose to use as you see fit. So the objection is overruled, and I'll allow the question.

¶68 St. Paul argues on cross-appeal that the District Court abused its discretion in allowing Anderson to testify about his industry standards for handling claims and his opinion on whether St. Paul violated any of these standards. St. Paul contends the District Court essentially allowed Anderson to testify in a manner which applied the law

30

to the facts of the case, and that such testimony was highly prejudicial. Furthermore, St. Paul claims that Anderson's standards were not properly disclosed prior to trial.

¶69　As we stated in *Perdue v. Gagnon Farms, Inc.*, 2003 MT 47, 314 Mont. 303, 65 P.3d 570,

> Rule 705, M.R.Evid., allows an expert to testify as to his opinions or inferences, and Rule 704, M.R.Evid., further allows an expert to present opinions and inferences that embrace the ultimate issues to be decided by the jury. We distinguish ultimate issues of fact from ultimate issues of law because legal conclusions offered by an expert witness invade the province of the jury whose duty it is to apply the law as given in the jury instructions to the facts of the case. Such expert opinions on the law can be highly prejudicial. *Hart-Anderson v. Hauck* (1988), 230 Mont. 63, 72, 748 P.2d 937, 943. While an expert witness may properly testify as to an ultimate issue of fact, expert opinion that states a legal conclusion or applies the law to the facts is inadmissible. *Mickelson v. Montana Rail Link, Inc.,* 2000 MT 111, ¶ 101, 299 Mont. 348, ¶ 101, 999 P.2d 985, ¶ 101.

*Purdue*, ¶ 28.

¶70　Based upon our review of the record, and given the cautionary instruction delivered by the District Court, we see no evidence that St. Paul was prejudiced. Thus, we conclude the District Court did not abuse its discretion when it allowed Anderson to testify.[5]

¶71　**Issue Seven:** *Did the District Court abuse its discretion when it prohibited the testimony of Dr. Lee?*

¶72　Dr. Lee was hired by St. Paul to conduct a reconstruction of the accident scene. Dr. Lee did so and the results of his reconstruction, as contained in the claims file, were admitted during trial. St. Paul also sought to have Dr. Lee provide direct testimony at

---

[5] However, this is not to say the same conclusion would necessarily apply on a retrial because the specifics of Anderson's testimony and the dynamics of the trial could be different.

trial. The District Court denied the testimony. The District Court noted that the issue in the UTPA case is what St. Paul knew at the time it was making its decision to deny Peterson's claim. With regard to Dr. Lee, the question was what information did St. Paul have from him, and when did St. Paul have it. Thus, the District Court concluded that Dr. Lee's direct testimony would be either cumulative or irrelevant since all the information available to St. Paul from Dr. Lee had already been put into evidence through the claims file.

¶73 St. Paul argues the denial of Dr. Lee's testimony constitutes an abuse of discretion. We disagree. Dr. Lee's testimony would have been either irrelevant or cumulative as the only relevant evidence from Dr. Lee in this case is the information he provided to St. Paul during the claims adjusting process. His direct testimony at trial would not assist the jury in deliberating on the UTPA claims. Therefore, we conclude the District Court did not abuse its discretion in excluding his testimony.

## CONCLUSION

¶74 Based on the insufficiency of the jury instructions, we reverse the jury's verdict and remand this matter to the District Court for a retrial. Upon retrial, the District Court should provide an instruction on "reasonably clear liability" consistent with our proposed instruction in ¶ 44 of this Opinion, and should assess proposed evidence and jury instructions in light of our analysis herein. Reversed and remanded.

/S/ PATRICIA COTTER

32

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT


Justice Michael E Wheat concurs.

¶75    I concur in the Court's Opinion.  I write separately to address Issues Three and Five.

¶76    I concur with the conclusion under Issue Three that the jury is entitled to see everything in the insurance company's claim file, including evidence that would be inadmissible in a liability trial.  However, because of the potential impact such evidence could have on the jury in a bad-faith trial, the jury must be instructed as to why such evidence is inadmissible and that it cannot be relied upon by the insurance company when making liability decisions.  Accordingly, I offer the following proposed jury instruction:

> In its evaluation of liability, [the insurance company] is obligated to investigate and gather information, facts, and evidence from many sources. However, some information, facts, or evidence would not be admissible during a trial to determine [defendant's] liability.  The insurance company cannot rely on inadmissible evidence when evaluating liability.  Nor can you rely on inadmissible evidence when you are deciding whether liability was reasonably clear.
>
> In this case, the court has determined that the following evidence is inadmissible, could not be relied on by [the insurance company] when it evaluated liability, and must be disregarded by you:

¶77    In this case, the obvious inadmissible evidence includes the evidence excluded by the trial court pursuant to a motion in limine and evidence regarding the lack of traffic

33

citations. Prior to trial in a bad-faith case, it will be counsel's responsibility to identify any evidence he or she believes is inadmissible and move the court accordingly.

¶78 I concur with the conclusion under Issue Five that attorney Gregoire was not the agent of the insurance company and that his allegiance was solely to his client. Furthermore, I see no conflict with defense counsel undertaking a liability analysis for the insurance company because that is his or her obligation in defense of the client. However, I would require that when defense counsel provides a liability analysis to the insurance company, it be in writing and committed to the claim file as evidence of the company's individual liability analysis. Thereafter, if a bad-faith case ensues, defense counsel's testimony in the bad-faith case should be limited by the contents of his or her written liability analysis. Defense counsel should not be allowed to testify about inadmissible or subjective indicators of trial success, such as whether the parties will be sympathetic witnesses, as a way to disclaim or modify a written liability analysis. If the claim file does not have a written liability analysis from defense counsel, then defense counsel should not be allowed to testify because the focus is on the insurance company's documented liability analysis.

¶79 I concur.

/S/ MICHAEL E WHEAT

Justice James C. Nelson specially concurs.

¶80 I specially concur in the Court's Opinion and I join Justice Wheat's concurrence as well.

¶81 I believe it is critical that the jury receive the additional instruction that Justice Wheat proposes. While the insurer may consider inadmissible evidence in evaluating a claim (providing that inadmissible evidence is not the only evidence and where such evidence may lead to admissible evidence), Opinion, ¶ 52, the jury must be instructed on how *it* is to evaluate this sort of evidence if such inadmissible evidence comes up in the UTPA trial.

¶82 While the lawyers and the trial judge know that inadmissible evidence will not be allowed into the underlying case on the merits, lay jurors, obviously, do not. For example, it is common knowledge that lay persons conflate criminal liability for a traffic accident—i.e., the issuance of or conviction on a traffic citation—with civil liability or "fault." Likewise, lay jurors typically believe that a party is not civilly liable or at "fault" if that party was not cited with a traffic offense in the accident. *See Smith v. Rorvik*, 231 Mont. 85, 90, 751 P.2d 1053, 1056 (1988) (holding that because the elements of proof in civil and criminal trials are decidedly different, evidence of the issuance or nonissuance of a traffic citation is generally irrelevant to the question of negligence and, thus, inadmissible in a civil trial).

¶83 Therefore, in cases where the insurer has considered clearly inadmissible evidence as part of its "reasonableness" determination and where this fact will be presented to the jury (either with or without the actual inadmissible evidence itself), then, like Justice Wheat, I would require the trial judge to give the additional jury instruction he suggests. The jury must understand that although the insurer may, with limitations, consider inadmissible evidence as part of its determination of "reasonably clear liability," that

inadmissible evidence cannot be considered by the jury as either proving or disproving civil liability on the part of either party in the underlying case.

¶84    With that caveat, I concur.

/S/ JAMES C. NELSON

Justice Brian Morris dissents.

¶85    I agree with the Court that its proposed instruction may have informed the jury slightly more fully and fairly of the critical legal aspects of the "reasonably clear liability" determination.  I also agree with the Court that the District Court did not have the benefit of its legal analysis.  ¶ 42.  No surprise there as Peterson failed to present to the Court most of the analysis and the legal authorities to support it that the Court has adopted.  The Court nevertheless takes the District Court to task for failing to allow the jury to make an informed determination of liability with respect to Peterson's UTPA claim.

¶86    The District Court first instructed the jury on St. Paul's duty under the UTPA to pay claims and medical expenses when liability is reasonably clear.  The court instructed the jury that liability does not need to be certain in order to be reasonably clear.  The court further instructed the jury on "reasonably clear liability" in accordance with § 27-1-702, MCA.  The instruction provided, in pertinent part, that "[n]egligence on the part of

36

the plaintiff does not bar his/her recovery unless such negligence was greater than the negligence of the defendant."

¶87　The Court concedes that the general principles of negligence law included in this instruction were "important to guide the jury's evaluation of St. Paul's conduct." ¶ 40. The Court determines, however, that the jury was not fully and fairly informed of the applicable law without another instruction that defined "reasonably clear liability" that would have focused the jury on an objective evaluation of St. Paul's conduct. ¶ 40.

¶88　To remedy this omission the Court does not adopt a jury instruction proffered by Peterson and rejected by the District Court. The Court glosses over the instructions proposed by Peterson that the District Court refused to give to the jury. The Court instead determines that the District Court should have provided an entirely new instruction, never previously required by a court in Montana, which flows from decisions by courts in Massachusetts and West Virginia. ¶ 41. The Court concludes that the District Court further should have instructed the jury that "liability is 'reasonably clear' when a reasonable person, with knowledge of the relevant facts and law, would conclude, for good reason, that the defendant is liable to the plaintiff." ¶ 39.

¶89　This proposed instruction may help clarify to the legal aspects of reasonably clear liability. The Court stretches to determine, however, that the District Court abused its discretion in failing to provide a jury instruction not offered by either party. I cannot agree under these circumstances that the District Court abused its discretion when it failed to provide the jury with instructions not proffered by either party. And I cannot agree under these circumstances that the District Court acted arbitrarily without

employment of conscientious judgment or exceeded the bounds of reason when it failed to anticipate the boundaries of "reasonably clear liability" as articulated here for the first time by this Court. I dissent from the Court's decision to remand this matter for a new trial.

/S/ BRIAN MORRIS

Justice Jim Rice joins in the foregoing dissent.

/S/ JIM RICE

District Court Judge Ray Dayton, sitting in for Justice W. William Leaphart, joins in the foregoing dissent.

/S/ RAY DAYTON